# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

REGINALD CARRICK, individually and
as Next Friend and Father of _____
CARRICK, a minor,

    Plaintiff,

vs.

JOSEPH MALLORY, individually:
JOHN KEARNEY, individually;
GEOFFREY SPEIGHT, individually;
MICHAEL CLOUDT, individually;
DAVID WOODS, individually; and
DEKALB COUNTY GEORGIA,

    Defendants.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

CIVIL ACTION NO.
1:16-CV-2997-AT

---

## PLAINITFF'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Plaintiff Reginald Carrick, in his individual and representative capacities, files this Memorandum of Law in Support of His Motion for Partial Summary Judgment, in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, showing the Court as follows:

## INTRODUCTION

This is an action under 42 U.S.C. § 1983, as well as various Georgia state law claims.  Plaintiff filed this action in Georgia's DeKalb County State Court. After Defendants removed the case to this Court and moved to dismiss the original Complaint, Plaintiff filed his Amended Complaint.  Count I of Plaintiff's Amended Complaint alleges claims against the individual Defendants under 42 U.S.C. § 1983 for violating Plaintiff's Fourth Amendment protection against unreasonable searches and seizures.  Plaintiff's claims addressed in this motion are based on Defendants' warrantless search and seizure of Plaintiff's home, vehicle, and person.

The evidence in the record shows that Plaintiff never voluntarily consented to Defendants' conduct and that Defendants were not otherwise justified in entering Plaintiff's home or searching and seizing Plaintiff or his effects.

## STATEMENT OF RELEVANT FACTS

For a detailed recitation of the facts, Plaintiff respectfully refers the Court to Plaintiff's Statement of Undisputed Facts filed with this Memorandum.

## ARGUMENT AND CITATION TO AUTHORITY

### I.    Summary Judgment Standard

Summary judgment is appropriate when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must establish that summary judgment is inappropriate by demonstrating specific facts that show a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).

The non-moving party cannot overcome summary judgment merely by resting on his or her allegations or pleadings (Fed. R. Civ. P. 56(c)), and mere inferences, conjecture, speculation or suspicion are insufficient to establish a material fact upon which to base the denial of summary judgment.  See Blackston v. Shook & Fletcher Insulation Co., 764 F.2d 1480, 1482 (11th Cir. 1985). The non-moving party must also "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); accord Anderson v. Liberty Lobby,

<u>Inc.</u>, 477 U.S. 242, 106 S. Ct. 2505, 2508, 91 L. Ed. 2d 202 (1986); <u>Young v. General Foods Corp.</u>, 840 F.2d 825, 828 (11th Cir. 1988). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir.1996) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 592, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); accord <u>Cuesta v. Sch. Bd. of Miami-Dade City</u>, Fla., 285 F.3d 962, 970 (11th Cir. 2002).  The ultimate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-52.

## II.    § 1983 Statutory Framework with Fourth Amendment

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C.A. § 1983.

- 4 -

To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law.  Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.  In the present case, the question presented is whether Defendants are liable under § 1983 for violating Plaintiff's Fourth Amendment protections by searching and seizing Plaintiff's vehicle and home without a warrant, and by seizing Plaintiff's person without justification.

**III.  Summary Judgment on Count I of the Amended Complaint should be granted because the individual Defendants did not have consent to search Plaintiff's vehicle**

The Fourth Amendment protects the curtilage of a dwelling, i.e., the area immediately surrounding the home that extends the intimate activity associated with the sanctity of a one's home and the privacies of one's life.  Oliver v. United States, 466 U.S. 170, 178, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (quoting Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886)). To determine whether some area constitutes the curtilage of the home, the Supreme

Court has identified four factors to consider: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is in an enclosure; (3) the nature of the uses for the area; and (4) the steps taken to protect the area from observation by passers-by. United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).   Although the curtilage is protected by the Fourth Amendment, this amendment is not implicated by entry upon private land to knock on a citizen's front door for legitimate police purposes unconnected with a search of the premises. United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006) (citing Coolidge v. New Hampshire, 403 U.S. 443, 466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Thus, an officer may approach a house to perform a knock-and-talk unless the occupant orders him off the property or the officer does not intend to ask questions. Taylor, 458 F.3d at 1204. This implicit license to knock-and-talk is based on a social norm that "typically permits a visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." Florida v. Jardines, 569 U.S. 1, 133 S. Ct. 1409, 1415, 185 L. Ed. 2d 495 (2013).

Where officers intrude upon curtilage, without a warrant, in the absence of exigent circumstances, for the "purpose of conducting a search for criminal activity," then that search is improper. United States v. Williams, 581 F.2d 451,

453 (5th Cir.1978); see also <u>Taylor</u>, 458 F.3d at 1204 (stating that an officer may "walk up the steps and knock on the front door of any man's 'castle,' with the honest intent of asking questions of the occupant thereof.") (quoting <u>Davis v. United States</u>, 327 F.2d 301, 303 (9th Cir.1964)). Once an attempt to initiate a consensual encounter with the occupants of a home fails, "the officers should end the knock and talk and change their strategy by retreating cautiously, seeking a search warrant, or conducting further surveillance." <u>United States v. Troop</u>, 514 F.3d 405, 410 (5th Cir.2008) (internal quotation omitted); see also <u>Florida v. Jardines</u>, 569 U.S. 1, 133 S. Ct. 1409, 1415, 185 L. Ed. 2d 495 (2013).

In the present case, Defendants Mallory, Kearney, and Speight made no attempt whatsoever to knock on Plaintiff's front door, or to initiate any contact with Plaintiff, before conducting a search of Plaintiff's vehicle. Mallory Dep. at 39:11-41:17; Speight Dep. at 15:22-25; Kearney Dep. at 16:2-24; Deposition of Plaintiff Reginald Carrick ("Plaintiff's Dep.") at 51:15-18. In fact, Defendants did not even walk up to Plaintiff's front door; instead going straight to Plaintiff's vehicle. Plaintiff's vehicle was clearly within the curtilage of the home. It was parked at the bottom of the driveway up against the side of the house. Deposition of Defendant Cloudt ("Cloudt Dep.") at 24:19-22. It was pulled forward far enough so that the passenger side door was even with the side door of the house.

Plaintiff's Dep. at 45:5-18.  Plaintiff parked it there to allow easy access from the vehicle to the side door of the house. Id.  The area where the vehicle was parked is enclosed by the house on one side and a chain-linked fence on the other side. Declaration of Reginald Carrick with photos, attached hereto as Exhibit 9.    The vehicle was beyond the pathway to the home's front door, and Defendants had to walk past the walkway that leads to the front door to get to the vehicle.  Id.

Defendants, in fact, had no intention of knocking on Plaintiff's front door until after they searched the vehicle.  See Mallory Dep. at 39:11-41:17.  The Defendants' suggestion that they searched the vehicle first because it was possibly stolen and involved in burglaries is implausible beyond belief.  The alleged BOLO that Defendant Mallory claims to have recalled involving a stolen Blue Durango was from four to five months before the incident at Plaintiff's home.  Mallory Dep. at 59:16-60:4.  If Defendants had truly believed Plaintiff's vehicle might have been the long ago stolen one, they should have knocked on Plaintiff's front door to question him or sought a search warrant to inspect the vehicle without Plaintiff's consent.    See United States v. Troop, 514 F.3d 405, 410 (5th Cir.2008). Defendants' suspicions did not give them a license to wander upon the curtilage of Plaintiff's home.  Significantly, Defendants are unable to produce any evidence of the BOLO that Defendant Mallory claims to have recalled.

Equally egregious as the initial search of Plaintiff's vehicle is Defendants' continuing search of the vehicle after Plaintiff had talked with them and asked them to leave his property.  Defendants Mallory and Kearney continued searching the vehicle for the VIN, knowing that Plaintiff did not consent to their presence on his property. Kearney Dep. at 19:7-17, Plaintiff Dep. at 65:3-17.   Incredibly, Defendant Mallory treated the vehicle as abandoned, even though it was parked on the enclosed driveway at the side of Plaintiff's house.  Defendant Mallory opened the car door to read the VIN. Mallory Dep. at 66:24-69:11.   He did not think he needed permission, since he treated the car as abandoned, but he asserts that Plaintiff consented to the search anyway by stating that the car was unlocked. Mallory Dep. at 69:12-70:17.

Even viewed in the light most favorable to Defendants, the inspection of Plaintiff's vehicle by Defendants Mallory, Kearney, and Speights was a search that violated the Fourth Amendment.  See Florida v. Jardines, 569 U.S. 1, 133 S. Ct. 1409, 1415, 185 L. Ed. 2d 495 (2013).  In Jarines, police took a drug-sniffing dog to Jardines' front porch on the theory that they were conducting a knock-and-talk. The police had gone to the house based on a tip that drugs were being grown there. The dog gave a positive alert for narcotics, and the police then used the alert to obtain a search warrant to search for narcotics in the home.  On appeal of Jardines'

motion to suppress the marijuana found from the search, the Jarines court held that the that the alleged knock-and-talk was, in fact, a search entitled to Fourth Amendment protections.   Justice Scalia delivered the opinion for the Supreme Court and noted that the issue presented was quite simple: "The officers were gathering information in an area belonging to Jardines and immediately surrounding his house—in the curtilage of the house, which we have held enjoys protection as part of the home itself. And they gathered that information by physically entering and occupying the area to engage in conduct not explicitly or implicitly permitted by the homeowner.   Florida v. Jardines, 569 U.S. 1, 133 S. Ct. 1409, 1414, 185 L. Ed. 2d 495 (2013).

**IV.    Summary Judgment on Count I should be granted because the individual Defendants did not have consent to search Plaintiff's home or to seize his property inside**

As noted by the Supreme Court, the sanctity of the home is an interest "embedded in our traditions since the origins of the Republic." Payton v. New York, 445 U.S. 573, 601, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980).   Warrantless entry into the home is therefore unreasonable, subject only to a few jealously and carefully drawn exceptions. McClish v. Nugent, 483 F.3d 1231, 1240 (11th Cir. 2007).    Voluntary consent provides one such exception to the warrant

requirement. See <u>Illinois v. Rodriguez</u>, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). When police officers seek to rely upon consent to justify the lawfulness of a search, they have the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.  See <u>Bumper v. North Carolina</u>, 391 U.S. 543, 548–49, 88 S. Ct. 1788, 1792, 20 L. Ed. 2d 797 (U.S. 1968).

In the present case, Defendants admit that they did not have a warrant to enter Plaintiff's home and there that were no exigent circumstance for such entry. Complaint at ¶ 9; Answer ¶ 9; Mallory Dep. at 82:5-83:9; Mallory Dep. at 39:11-41:17; Speight Dep. at 15:6-25; Kearney Dep. at 16:2-12.  Accordingly, the only issue at hand is whether Plaintiff voluntarily consented to the entry into his home.

Plaintiff's statements and testimony are consistent and unequivocal on this point:  He did not consent.  Plaintiff Dep. at 76:4-18.  At the scene of the incident, Plaintiff repeatedly told Defendants to leave his property.  See Police Complaint Form, attached to hereto as Exhibit 10; Plaintiff Dep. at 79:18-80:11.  He was upset, and he reiterated verbally that Defendants had no legal right to be on his private property. Plaintiff Dep. at 76:4-18.  As he was being pushed into his home by Defendants, Plaintiff reiterated that he did not consent to the entry.  Plaintiff

Dep. at 70:2-12.  After the incident, Plaintiff informed Defendant Cloudt that he intended to pursue legal action because of the violation of his rights.  Cloudt Statement, attached hereto as Exhibit 14.  Plaintiff then filed a formal complaint with the DeKalb County Police Department in which he described the unauthorized entry into his house.  See Police Complaint Form, attached to hereto as Exhibit 10.

Defendants, on the other hand, have been very vague and inconsistent in their statements and testimony about the entry into Plaintiff's home.  The police report filed by Defendant Mallory does not even mention that any of the Defendants entered the home.  Incident Report, attached to the Memorandum of Law as Exhibit 11.  Likewise, the written statements given by the other four Defendants in response to Plaintiff's formal citizen's complaint all fail to mention that any of the Defendants entered the home.  See Statements by Defendants, attached hereto as Exhibits 12, 13, 14, and 15. Based on these incomplete statements alone, the DeKalb County Police Department exonerated Defendants and Defendants assumed the matter was concluded.  DeKalb County did no further investigation of the incident, failing to contact Plaintiff or any neighbor witnesses for an account of what really occurred.  Mears Dep. at 27:8-28:10.

Defendants' failure to mention their entry into Plaintiff's home is significant in showing that Defendants jointly intended to cover up the fact that one or more of them had entered Plaintiff's home without consent. Even Defendant Woods, a Lieutenant, admits that the fact that a police officer enters someone's home to retrieve a driver's license is an important detail that should be included in a police report and in a statement given to describe the incident in response to a citizen's complaint. Woods Dep. at 40:8-19. Defendant Woods admits that the omission of that fact was a mistake. Woods Dep. at 40:20-21. To believe Defendants' version of the facts, a jury would have to accept that each Defendant made the same mistake independently when they wrote the statements (or in the case of Defendant Mallory, the incident report) within days of the actual incident. That is not plausible enough to be credible. The incident report by Defendant Mallory was submitted on the same day of the incident. Incident Report, attached hereto as Exhibit 11. Defendants Kearney, Cloudt, and Woods submitted their statements on July 25, 2014, the day after the incident. Statements of Kearney, Cloudt, and Woods, attached hereto as Exhibits 12, 14, and 15, respectively. Defendant Speight submitted his statement on July 30, 2014. Speight Statement, attached hereto as Exhibit 13.

The fact that Defendants did not obtain <u>written</u> consent for the alleged consented entry is also telling.  As admitted by Defendant Woods, when police officers ask to enter someone's home, it is better to get written consent instead of verbal.  Woods Dep. at 11:9-12. At the time of the incident, each of the Defendants had in his patrol car a consent form to use when obtaining written consent to search someone's home or vehicle.  Woods Dep. at 11:13-12:24.  Defendant Woods explains that written consent was not obtained because going into Plaintiff's home was not a "search".   Instead, he says, "We were not searching for anything specific other than his driver's license."  Woods Dep. at 28:16-29:1.  Defendant Cloudt gives a similar excuse.  Cloudt Dep. at 29:12-30:12.  Of course, such excuses do not survive Fourth Amendment scrutiny.  See <u>Florida v. Jardines</u>, 569 U.S. 1, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013).

After Plaintiff filed this action, Defendants acknowledged that "certain of the Defendants escorted Plaintiff into his home so that he safely could retrieve his driver's license."  Answer, ¶ 15.  In response to Plaintiffs Request For Admissions Nos. 1, 3, and 5 regarding whether Defendants Mallory, Kearney, or Speight had entered Plaintiff's residence, the Defendants denied the requests on grounds that they lacked knowledge or information sufficient to form a belief as to the requests.  Defendants admitted, however, that "at least one DeKalb County police officer

entered the threshold of the residence . . .".  See Defendants' Responses to Request for Admissions, attached hereto as Exhibit 16.

At their depositions, Defendants gave yet more differing accounts of who went in the home.  Defendant Mallory stated he did not think he entered the house, but admitted that he could not remember.  Mallory, Dep. at 84:4-86:24.  He also cannot remember which or how many officers entered the house. Id. At 86:25-87:3. At his deposition, Defendant Kearney stated that he never saw anyone go into Plaintiff's residence with Plaintiff.  Kearney Dep. at 33:3-8.  Defendant Speight stated that he and another Defendant took Plaintiff into his house to get Plaintiff's ID, although Defendant Speight cannot recall which other Defendant it was.  Speight Dep. at 26:6-15.

At his deposition, Defendant Cloudt stated that he did not remember anything about the incident other than what was included in his written statement.  Cloudt Dep. at 23:13-15.  His written statement did not mention anyone entering the house.  Cloudt Statement, attached hereto as Exhibit 14.  Nevertheless, Defendant Cloudt testified that only Defendant Speight went into the house.  Cloudt Dep. at 49:4-8, 56:22-57:5.  At his deposition, Defendant Wood stated that he did not enter the residence, but that he sent at least two officers in to retrieve the

driver's license.   Wood Dep. at 30:11-18.   Defendant Woods cannot remember which Defendants entered the house.  Id.

Defendants are equally vague and contradictory on the issue of whether and how Plaintiff consented to the entry into his home.  Defendant Mallory states that Plaintiff told Defendants that his ID was in his house and that he would go get it. Defendant Mallory continues, "[a]nd that's when he was allowed to go get his ID, but he was accompanied by I know at least one of the officers."  Mallory Dep. at 77:19-78:4. Defendant Mallory asserts that the action constitutes consent because Plaintiff "basically said, Yeah, we can go get the ID".  Mallory Dep. at 80:10-22.

Defendant Kearney states that Plaintiff did not give consent to enter his home, as far as Defendant Kearney knows.  Kearney Dep. at 35:10-18.  Defendant Speight flatly admits that Plaintiff did not consent to Defendants' entering his home.  Speight Dep. at 27:4-24.

At his deposition, Defendant Cloudt, who cannot remember anything other than what was included in his written statement, testified that Plaintiff consented by saying "something to the effect that we can go inside with him and get his ID." Cloudt Dep. at 26:8-24, 32:7-12.  Of course, that alleged fact is not included in his written statement.

Defendant Woods states that he assumes Plaintiff consented to the officers' entry into his home because "he let us in" after the Defendants told him they would have to accompany him into the home to get the driver's license.  Woods Dep. at 27:12-28:15. Plaintiff was in handcuffs and upset at the time.  Wood Dep. at 27:12-15.

David Bussie, Jr., a neighbor who witnessed the incident, heard Plaintiff tell the Defendants to leave his property.  Deposition of David Bussie, Jr. ("Bussie Dep.") at 13:2-19.  The same witness also testified that Defendants were pushing Plaintiff into the house and that it did not appear that Plaintiff gave them permission or that he wanted to go inside.  Bussie Dep. at 13:18-19, 34:18-23, 53:8-56:22.

Even viewed in a light most favorable to Defendants, the evidence of record does not create a material issue of fact regarding whether free and voluntary consent was given by Plaintiff.  The best argument Defendants can make (as suggested from Defendants Mallory, Cloudt, and Woods in their deposition testimony above) is that Plaintiff consented to the entry by acquiescing to Defendants' insistence that they would accompany him to retrieve his ID.  Of course, that argument is not enough to equal the free and voluntary consent needed for Fourth Amendment purposes.  See Amos v. United States, 255 U.S. 313, 315,

317, 41 S.Ct. 266, 267, 268, 65 L.Ed. 654 (1921) (holding that spouse's consent to search was not voluntary when agents told her that they had come to search the premises); Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) (stating that there can be no effective consent to a search or seizure if that consent follows a law enforcement officer's assertion of an independent right to engage in such conduct).

Furthermore, Defendants' testimony is negated by the totality of the circumstances, which shows overwhelmingly that Plaintiff did not consent in any manner.  The case of United States v. Harvey, 901 F. Supp. 2d 681, 692 (N.D.W. Va. 2012) is instructive on the issues in the present case relating to the purported consent to search a home.  In Harvey, police officers were conducting a traffic stop that occurred in front of Harvey's home.  Harvey was a passenger in the stopped vehicle, which was being searched based on a suspicion of marijuana.  As some point, an officer asked Harvey, who was detained but not under arrest, for his name and date of birth.  Harvey maintained that he provided a correct name, while the police officer asserted that a false name was given.  In any event, the name that was run through the police system could not be verified.  When the officer informed Harvey of that fact, Harvey stated either, "My identification is in the house" (according to the officer) or "My ID is in my crib" (according to Harvey).

The officer then escorted Harvey into his home and searched it, where he found a firearm.  Harvey was charged with illegal possession of a firearm, since he was already a convicted felon.

On Harvey's motion to suppress, the State argued that the verbal exchange between the police officer and Harvey amounted to consent because: 1) Harvey knew that the officer would have to escort him inside the house; 2) Harvey did not protest to the entry; and 3) Harvey created the situation by not producing his driver's license in the first place.  Harvey argued that he did not protest the entry at the time because the officer told him "I'm going to escort you inside your house, and you are going to give me your ID." Considering the totality of the circumstances, the Harvey court ruled that the entry into Harvey's home violated the Fourth Amendment.  The court noted that consent is not lightly to be inferred and that a purported implied verbal consent requires a heightened level of proof by the government.  Harvey, 901 F. Supp.2d at 692. (N.D.W. Va. 2012).  Moreover, the Harvey court found no evidence that the police officer asked for Harvey's consent, noting that to be "particularly noteworthy in light of the fact that a request for permission, in some capacity, is often seen as a necessary predicate for reasonably inferring implied consent."  Harvey, 901 F. Supp.2d at 694.

In the present case, like in <u>Harvey</u>, the record shows that Defendants never sought Plaintiff's consent to enter his home. The two ranking officers at the scene (Defendants Woods and Cloudt) claim, incredibly, that the entry was not a "search" and did not need consent.  Yet, in an effort to cover their bases, the Defendants have attempted to show some type of implied consent on Plaintiff's part.  The record does not support Defendant's version of the facts, and summary judgment on Count I should be granted to Plaintiff.

**V.     Summary Judgment on Count I should be granted because the individual Defendants did not have authority to remain on Plaintiff's property so that the detention of Plaintiff was an improper seizure**

Where officers intrude upon curtilage, without a warrant, in the absence of exigent circumstances, for the "purpose of conducting a search for criminal activity," then that search is improper. <u>United States v. Williams</u>, 581 F.2d 451, 453 (5th Cir.1978); see also <u>Taylor</u>, 458 F.3d at 1204 (stating that an officer may "walk up the steps and knock on the front door of any man's 'castle,' with the honest intent of asking questions of the occupant thereof.") (quoting <u>Davis v. United States</u>, 327 F.2d 301, 303 (9th Cir.1964)).  Once an attempt to initiate a consensual encounter with the occupants of a home fails, "the officers should end

- 20 -

the knock and talk and change their strategy by retreating cautiously, seeking a search warrant, or conducting further surveillance." United States v. Troop, 514 F.3d 405, 410 (5th Cir.2008) (internal quotation omitted); see also Florida v. Jardines, 569 U.S. 1, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013).

In the present case, there is no dispute that Plaintiff's person was "seized" by Defendants. Plaintiff was handcuffed and detained. Speight Dep. at 35:16-36:4. The only question is whether the seizure was unreasonable in violation of the Fourth Amendment.

Inasmuch as Defendants did not have authority to come onto Plaintiff's property for purposes of conducting a search of Plaintiff's vehicle (as argued above), the detention of Plaintiff was tainted and unreasonable. Even assuming, *arguendo*, that Defendants had intended to conduct a knock-and-talk with Plaintiff, Defendants had no authority to remain on the curtilage of the home after Plaintiff asked them to leave. Kearney Dep. at 19:7-17; Speight Dep. at 23:5-12. Defendants claim that Plaintiff was handcuffed because the name he allegedly gave them did not show up in the NCIC computer system. Speight Dep. at 24:4-16; Incident Report, attached hereto as Exhibit 11. Yet, Defendants cannot show a Constitutionally sound reason for their presence on Plaintiff's property or their request for identification of one who is at home on his private property.

## **CONCLUSION**

For the foregoing reasons, there are no genuine issues of material fact relating to the issues of the individual Defendants' liability under Count I of the Amended Complaint, and Plaintiff's Motion for Partial Summary Judgment should be granted.

Respectfully submitted,

**Hall Hirsh Hughes, LLC**

By:  s/ *David R. Hughes*
   David R. Hughes
   Ga. Bar No. 375615
   Attorney for Plaintiff

150 East Ponce de Leon Avenue, Suite 450
Decatur, Georgia 30030
404-638-5880
david@h3-law.com

## CERTIFICATE OF SERVICE AND LOCAL RULE 5.1 COMPLIANCE

The undersigned hereby certifies that the foregoing document has been prepared in Times New Roman font, 14-point in accordance with N.D.Ga.L.R. 5.1(C) and electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorney of record:

> Aaron J. Ross, Esq.
> Elizabeth L. Fite, Esq.
> DeKalb County Law Department
> 1300 Commerce Drive, 5th Floor
> Decatur, GA  30030

This 7th day of August, 2017.

Respectfully submitted,

**Hall Hirsh Hughes, LLC**

By:  s/ *David R. Hughes*
DAVID R. HUGHES
Ga. Bar No. 375615
Attorney for Plaintiff

150 East Ponce de Leon Avenue, Suite 450
Decatur, GA  30030
404-638-5883
david@h3-law.com